

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 0 2 2015

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

**ORIGINAL**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES ex rel.<br>DEBRA CONAWAY,<br>ALOMA BRYAN, and<br>DELORES HENDERSON,<br><br>STATE OF GEORGIA ex rel.<br>DEBORAH CONAWAY,<br>ALOMA BRYAN, and<br>DELORES HENDERSON,<br><br>  Plaintiffs,<br><br>v.<br><br>UNIVERSAL HEALTH SERVICES, INC.,<br>and SOUTHERN CRESCENT<br>BEHAVIORAL HEALTH SYSTEM,<br><br>  Defendants. | **1:15-CV-3094**<br>CASE NO. _____<br><br>FILED UNDER SEAL<br><br>Jury Trial Requested |

## COMPLAINT

1.     This is a *qui tam* action by Plaintiffs-Relators Debra Conaway, Aloma Bryan,

and Delores Henderson ("Relators"), on behalf of the United States and the State of

Georgia, to recover damages and civil penalties arising from Defendants' violations

of the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, and the Georgia State

False Medicaid Claims Act, O.C.G.A. § 49-4-168 *et seq.* As shown below,

Defendants, who operate psychiatric facilities, defrauded the United States and Georgia through schemes that were also harmful to patients in Defendants' care.

Jurisdiction and Venue

2.      This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and the Georgia State False Medicaid Claims Act, O.C.G.A. § 49-4-168 *et seq.*

3.      Jurisdiction over this action is vested in this Court by 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331, in that Count One of this action arises under the laws of the United States. Supplemental jurisdiction over Count Two arises under 31 U.S.C. § 3732(b), since that count arises from the same transactions or occurrences as Count One, and under 28 U.S.C. § 1367, since that count is so related to the federal claims that they form part of the same case or controversy.

4.      Venue is proper in this district under 31 U.S.C. § 3732(a). At least one of the Defendants can be found, resides, and transacts business within the district, and many of the acts forming the basis of this action occurred within the district.

The Parties and Related Entities

5.      Universal Health Services, Inc. ("UHS") is a Delaware corporation with its corporate headquarters in Pennsylvania. UHS operates more than 226 facilities, most of which are behavioral health facilities and acute care hospitals, with a small number of ambulatory surgery centers throughout the United States, including in this

district. A large percentage of UHS's revenues comes from Medicare, Medicaid, and other federal health care programs.

6.      Southern Crescent Behavioral Health System ("SCBHS") is, upon information and belief, a subsidiary of UHS. SCBHS operates two psychiatric facilities near Atlanta, Georgia: (i) Anchor Hospital ("Anchor"), a 132-bed adult psychiatric hospital, and (ii) Crescent Pines, a 50-bed juvenile and adult psychiatric hospital. Anchor is divided into two separate units. The first unit is for patients who only have a psychiatric diagnosis. The second unit is for "dual diagnosis" patients — i.e., a psychiatric diagnosis as well as substance abuse issues. Upon information and belief, UHS owns several other behavioral health facilities in this State.

7.      Relator Debra Conaway was employed as an Assistant Director of Nursing at Anchor from October 2013 through September 2014. In that capacity, she was a key member of the nursing management team. She was also involved in drafting and implementing policies and procedures, participating in treatment planning, orientation of staff, and advised on JCAH compliance. Relator Conaway's immediate supervisor was Kim Butts, Nurse Executive for Anchor.

8.      Relator Aloma Bryan was employed most recently as a Nursing Supervisor at Anchor. She was employed with Anchor from May 2006 through September 2014. In that capacity, she was responsible for total oversight of patient services and

nursing supervision, often working directly with patients. Relator Bryan's immediate supervisor was Kim Butts, Nurse Executive for Anchor.

9. Relator Delores Henderson was employed as a mental health assistant at Anchor from February 2009 through August 2014. In that capacity, she monitored patient safety. She worked directly with patients. Relator Henderson's immediate supervisor was Kim Butts, Nurse Executive for Anchor.

### Reimbursement for Inpatient Psychiatric Services

10. Medicare payment for most inpatient hospital services is based on a prospective payment system, under which a hospital is paid a predetermined amount based upon the patient's Diagnostic Resource Group ("DRG"). Under this DRG system, the hospital receives a fixed payment regardless of the length of the patient's stay. Thus, the hospital does not have an incentive to prolong the patient's stay in the hospital.

11. Inpatient psychiatric services provided in a psychiatric hospital, however, are not covered by the DRG system, but are covered by a separate Inpatient Psychiatric Facility Prospective Payment System ("IPF PPS"). Under this system, psychiatric facilities are paid a per diem amount for each patient, with adjustments to account for certain facility and patient characteristics.

4

12.    Because psychiatric hospitals are paid a per diem amount, they have an incentive to prolong a patient's stay. The Centers for Medicare and Medicaid Services ("CMS") noted that it was concerned about this incentive when it implemented the IPF PPS system. *See* 69 Fed. Reg. 66922, 66952 ("since the IPF PPS is a per diem payment methodology, we are concerned about inadvertently creating an incentive to unnecessarily delay discharge in order to receive additional payment").

13.    Although CMS expressed its concern about creating an incentive to delay discharge, it noted that existing regulations require that, as a condition of participation in the Medicare program, "the hospital must have a discharge planning process that applies to all patients. The hospital's policies and procedures must be specified in writing." 42 C.F.R. § 482.43. Among other things, "[t]he hospital personnel must complete the evaluation on a timely basis ... to avoid unnecessary delays in discharge." 42 C.F.R. § 482.43(b)(5), *discussed in* 69 Fed. Reg. 66922, 66952. Meeting the conditions of participation is characterized as a condition of payment under 42 C.F.R. § 412.404 ("an inpatient psychiatric facility must meet the conditions of this section to receive payment under the prospective payment system described in this subpart for inpatient hospital services ...").

Case 2:17-cv-02233-AB Document 1 Filed 09/02/19 Page 6 of 12

### Anchor Routinely Manipulated Discharge Dates to Maximize Revenue

14.     During their time at Anchor, Relators observed that Anchor administrators would regularly pressure employees to keep patients longer than was medically necessary in order to increase revenues. Even when members of the medical team determined that discharge was appropriate, the administrators would routinely seek to override their professional judgment, and persuade or pressure them into changing the patient's proposed discharge date.

15.     At Anchor, the treatment team held regular meetings to discuss how patients were progressing, as well as their proposed discharge date. During these meetings, the team would determine which patients were ready to be discharged.

16.     Routinely, CEO Margaret Collier would pressure members of the team to change patients' scheduled discharge dates. The reasons for such delay would have nothing to do with the patient's condition, but would be based solely on the hospital's desire to bill for additional days of care.

17.     Routinely, Kim Butts would pressure Relators to change the acuity level of patients, or convince the psychiatrists to change acuity levels, in order to increase the number of patients within the facility. For example, on or about February 11, 2014, Ms. Butts sent text messages to Relator Debra Conaway directing her to artificially heighten acuity levels for certain patients.

6

Case 1:15-cv-03094-TCB-SEALED   Document 1   Filed 09/02/15   Page 7 of 12

18.    Anchor's intentional efforts to delay patient discharge led to overcrowding. Often due to overcrowding, patients were not given rooms or even beds but were placed in day areas or waiting rooms on the floor or couch. Although Relators worked at Anchor, they believe the same practices were likely followed at the other facilities, including Crescent Pines, which was part of the same health system and had the same CEO.

19.    In addition to violating Medicare's conditions of payment and participation and causing false claims for medically unnecessary services, keeping a patient in a psychiatric facility after he should be discharged increases the risk of harm to the patient, especially in an overcrowded facility.

Anchor Recruited Patients to Undergo Unnecessary Procedures

20.    Another practice used at Anchor to illegally increase revenues was to recruit patients to undergo medically unnecessary psychiatric procedures.

21.    For example, patients who had little or no family support were routinely targeted and recruited to undergo electroconvulsive therapy ("ECT") even though the patient was not otherwise a proper candidate for ECT and/or ECT was not medically necessary.   This dangerous practice was particularly lucrative for Defendants because the reimbursement rate for ECT is much greater than the actual cost of performing ECT.

7

Case 1:15-cv-03094-TGB-SEALED Document 1 Filed 09/02/15 Page 8 of 12

Anchor Admitted Patients Who Were Medically Unstable

22.     Another scheme used at Anchor to illegally increase revenues was to admit patients who were medically unstable for treatment at a psychiatric facility and who should have been treated at a hospital or other acute medical care facility. Administrators at Anchor would intentionally represent that a potential patient had a lower acuity level in order to admit them as a patient at Anchor, when the patient should instead have been sent to a hospital or acute medical care facility.

23.     Relators were routinely instructed to contact an Anchor-employed psychiatrist and request that the psychiatrist admit a patient who needed medical care from a hospital. If one psychiatrist refused the patient, then the Relators were pressured to contact additional Anchor-employed psychiatrists until the patient was eventually admitted at Anchor, despite the patient being in a physical condition that required medical care from a hospital and not psychiatric or mental health care from Anchor.

24.     As a result of the actions described above, UHS and SCHBS would routinely submit claims to Medicare, Medicaid, and other federal healthcare programs that were false because (i) the services were medically unnecessary, and indeed harmful, (ii) UHS and SCHBS violated applicable conditions of payment and participation, or (iii) they were otherwise improper.

8

## COUNT ONE

## FEDERAL FALSE CLAIMS ACT

25.    The allegations in the preceding paragraphs are incorporated by reference.

26.    Defendants violated the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, in that they:

    a.    knowingly presented or caused to be presented numerous false claims for payment or approval;

    b.    knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, and to get false or fraudulent claims paid or approved;

    c.    knowingly made, used, or caused to be made or used, false records or statements material to an obligation to pay or transmit money or property to the Government, or to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government;

    d.    knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the Government; and

    e.    conspired to commit the above acts, and to defraud the government by getting false or fraudulent claims allowed or paid.

27.     As a result of Defendants' violations of the Federal False Claims Act, the United States has suffered damages in an amount to be determined at trial.

## COUNT TWO

## GEORGIA STATE FALSE MEDICAID CLAIMS ACT

28.     The allegations in the preceding paragraphs are incorporated by reference.

29.     Defendants violated the Georgia State False Medicaid Claims Act, O.C.G.A. § 49-4-168 *et seq.*, in that they:

a.      knowingly presented or caused to be presented numerous false claims for payment or approval to the Georgia Medicaid program;

b.      knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Georgia Medicaid program;

c.      conspired to defraud the Georgia Medicaid program by getting false or fraudulent claims allowed or paid; and

d.      knowingly made, used, or caused to be made or used false records or statements to conceal, avoid, or decrease an obligation to pay, repay, or transmit money or property to the State of Georgia.

30.     As a result of Defendants' violations of the Georgia State False Medicaid Claims Act, the State of Georgia has suffered damages in an amount to be determined at trial.

WHEREFORE, Relators, on behalf of themselves, the United States, and the State of Georgia, pray:

(a)     That the Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States and the State of Georgia have sustained because of Defendants' actions, plus a civil penalty of between $5,500 and $11,000 for each violation of the Federal False Claims Act and, separately, an additional civil penalty of between $5,500 and $11,000 for each violation of the Georgia State False Medicaid Claims Act;

(b)     That Relators be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall be at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim if the government intervenes, and not less than 25 percent nor more than 30 percent of the proceeds of the action or settlement of the claim if the government does not intervene;

(c)     That Relators be awarded all costs and expenses incurred, including reasonable attorneys' fees; and

(d)     That the Court order such other relief as is appropriate.

Trial by jury is hereby requested.

*Attorneys for Relators*

Jordan M. Jewkes
GA Bar No. 940491
Webb & Taylor, LLC
400 Westpark Court, Suite 220
Peachtree City, GA 30269
(770) 631-1811
jjewkes@webb-firm.com

David M. Stewart
GA Bar No. 142026
CROWDER STEWART LLP
P.O. Box 160
Augusta, GA 30903
(706) 434-8799
david@crowderstewart.com

v/ permission
JMJ

JS44 (Rev. 1/13 NDGA)  **CIVIL COVER SHEET**  **1:15-CV-3094**

The JS44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket record. (SEE INSTRUCTIONS ATTACHED)

## I. (a) PLAINTIFF(S)

United States ex rel.
Debra Conaway,
Aloma Bryan, and
Delores Henderson

**(b) COUNTY OF RESIDENCE OF FIRST LISTED**
PLAINTIFF Fayette
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANT(S)

Universal Health Services, Inc. and
Southern Crescent Behavioral
Health System

**COUNTY OF RESIDENCE OF FIRST LISTED**
DEFENDANT Fulton
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS** (FIRM NAME, ADDRESS, TELEPHONE NUMBER, AND E-MAIL ADDRESS)

Jordan Jewkes
Webb + Taylor, LLC
400 Westpark Ct, Ste 220
Peachtree City, GA 30269
770-631-1811
jjewkes@webb-firm.com

David M. Stewart
Crowder Stewart LLP
PO Box 160
Augusta, GA 30903
706-434-8799
david@crowderstewart.com

**ATTORNEYS** (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN "X" IN ONE BOX ONLY)

[X] 1 U.S. GOVERNMENT PLAINTIFF

[ ] 2 U.S. GOVERNMENT DEFENDANT

[ ] 3 FEDERAL QUESTION (U.S. GOVERNMENT NOT A PARTY)

[ ] 4 DIVERSITY (INDICATE CITIZENSHIP OF PARTIES IN ITEM III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(FOR DIVERSITY CASES ONLY)

| | PLF | DEF | | PLF | DEF | |
|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [X] 1 | [ ] 1 | INCORPORATED OR PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [ ] 4 | |
| CITIZEN OF ANOTHER STATE | [ ] 2 | [ ] 2 | INCORPORATED AND PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 | |
| CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | FOREIGN NATION | [ ] 6 | [ ] 6 | |

## IV. ORIGIN (PLACE AN "X "IN ONE BOX ONLY)

[X] 1 ORIGINAL PROCEEDING

[ ] 2 REMOVED FROM STATE COURT

[ ] 3 REMANDED FROM APPELLATE COURT

[ ] 4 REINSTATED OR REOPENED

[ ] 5 TRANSFERRED FROM ANOTHER DISTRICT (Specify District)

[ ] 6 MULTIDISTRICT LITIGATION

[ ] 7 APPEAL TO DISTRICT JUDGE FROM MAGISTRATE JUDGE JUDGMENT

## V. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE - DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

31 U.S.C. § 3729, Federal False Claims Act — This case involves "whistleblower" claims.

(IF COMPLEX, CHECK REASON BELOW)

[ ] 1. Unusually large number of parties.

[ ] 2. Unusually large number of claims or defenses.

[ ] 3. Factual issues are exceptionally complex

[ ] 4. Greater than normal volume of evidence.

[ ] 5. Extended discovery period is needed.

[ ] 6. Problems locating or preserving evidence

[ ] 7. Pending parallel investigations or actions by government.

[ ] 8. Multiple use of experts.

[ ] 9. Need for discovery outside United States boundaries.

[ ] 10. Existence of highly technical issues and proof.

**CONTINUED ON REVERSE**

| FOR OFFICE USE ONLY | | | |
|---|---|---|---|
| RECEIPT # _____ | AMOUNT $ _____ | APPLYING IFP _____ | MAG. JUDGE (IFP) _____ |
| JUDGE _____ | MAG. JUDGE _____ (Referral) | NATURE OF SUIT _____ | CAUSE OF ACTION _____ |

+B     375     31:3729

Case 2:17-cv-02233-AB   Document 1-1   Filed 05/16/17   Page 14 of 14
Case 1:15-cv-03094-TGB - SEALED   Document 11-1   Filed 09/02/15   Page 2 of 2
Rec'd   SEP 0 2 2015.

## VI. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT - "0" MONTHS DISCOVERY TRACK**
- ☐ 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
- ☐ 152 RECOVERY OF DEFAULTED STUDENT LOANS (Excl. Veterans)
- ☐ 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS

**CONTRACT - "4" MONTHS DISCOVERY TRACK**
- ☐ 110 INSURANCE
- ☐ 120 MARINE
- ☐ 130 MILLER ACT
- ☐ 140 NEGOTIABLE INSTRUMENT
- ☐ 151 MEDICARE ACT
- ☐ 160 STOCKHOLDERS' SUITS
- ☐ 190 OTHER CONTRACT
- ☐ 195 CONTRACT PRODUCT LIABILITY
- ☐ 196 FRANCHISE

**REAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
- ☐ 210 LAND CONDEMNATION
- ☐ 220 FORECLOSURE
- ☐ 230 RENT LEASE & EJECTMENT
- ☐ 240 TORTS TO LAND
- ☐ 245 TORT PRODUCT LIABILITY
- ☐ 290 ALL OTHER REAL PROPERTY

**TORTS - PERSONAL INJURY - "4" MONTHS DISCOVERY TRACK**
- ☐ 310 AIRPLANE
- ☐ 315 AIRPLANE PRODUCT LIABILITY
- ☐ 320 ASSAULT, LIBEL & SLANDER
- ☐ 330 FEDERAL EMPLOYERS' LIABILITY
- ☐ 340 MARINE
- ☐ 345 MARINE PRODUCT LIABILITY
- ☐ 350 MOTOR VEHICLE
- ☐ 355 MOTOR VEHICLE PRODUCT LIABILITY
- ☐ 360 OTHER PERSONAL INJURY
- ☐ 362 PERSONAL INJURY - MEDICAL MALPRACTICE
- ☐ 365 PERSONAL INJURY - PRODUCT LIABILITY
- ☐ 367 PERSONAL INJURY - HEALTH CARE/ PHARMACEUTICAL PRODUCT LIABILITY
- ☐ 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**TORTS - PERSONAL PROPERTY - "4" MONTHS DISCOVERY TRACK**
- ☐ 370 OTHER FRAUD
- ☐ 371 TRUTH IN LENDING
- ☐ 380 OTHER PERSONAL PROPERTY DAMAGE
- ☐ 385 PROPERTY DAMAGE PRODUCT LIABILITY

**BANKRUPTCY - "0" MONTHS DISCOVERY TRACK**
- ☐ 422 APPEAL 28 USC 158
- ☐ 423 WITHDRAWAL 28 USC 157

**CIVIL RIGHTS - "4" MONTHS DISCOVERY TRACK**
- ☐ 441 VOTING
- ☐ 442 EMPLOYMENT
- ☐ 443 HOUSING/ ACCOMMODATIONS
- ☐ 444 WELFARE
- ☐ 440 OTHER CIVIL RIGHTS
- ☐ 445 AMERICANS with DISABILITIES - Employment
- ☐ 446 AMERICANS with DISABILITIES - Other
- ☐ 448 EDUCATION

**IMMIGRATION - "0" MONTHS DISCOVERY TRACK**
- ☐ 462 NATURALIZATION APPLICATION
- ☐ 465 OTHER IMMIGRATION ACTIONS

**PRISONER PETITIONS - "0" MONTHS DISCOVERY TRACK**
- ☐ 463 HABEAS CORPUS- Alien Detainee
- ☐ 510 MOTIONS TO VACATE SENTENCE
- ☐ 530 HABEAS CORPUS
- ☐ 535 HABEAS CORPUS DEATH PENALTY
- ☐ 540 MANDAMUS & OTHER
- ☐ 550 CIVIL RIGHTS - Filed Pro se
- ☐ 555 PRISON CONDITION(S) - Filed Pro se
- ☐ 560 CIVIL DETAINEE: CONDITIONS OF CONFINEMENT

**PRISONER PETITIONS - "4" MONTHS DISCOVERY TRACK**
- ☐ 550 CIVIL RIGHTS - Filed by Counsel
- ☐ 555 PRISON CONDITION(S) - Filed by Counsel

**FORFEITURE/PENALTY - "4" MONTHS DISCOVERY TRACK**
- ☐ 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
- ☐ 690 OTHER

**LABOR - "4" MONTHS DISCOVERY TRACK**
- ☐ 710 FAIR LABOR STANDARDS ACT
- ☐ 720 LABOR/MGMT. RELATIONS
- ☐ 740 RAILWAY LABOR ACT
- ☐ 751 FAMILY and MEDICAL LEAVE ACT
- ☐ 790 OTHER LABOR LITIGATION
- ☐ 791 EMPL. RET. INC. SECURITY ACT

**PROPERTY RIGHTS - "4" MONTHS DISCOVERY TRACK**
- ☐ 820 COPYRIGHTS
- ☐ 840 TRADEMARK

**PROPERTY RIGHTS - "8" MONTHS DISCOVERY TRACK**
- ☐ 830 PATENT

**SOCIAL SECURITY - "0" MONTHS DISCOVERY TRACK**
- ☐ 861 HIA (1395ff)
- ☐ 862 BLACK LUNG (923)
- ☐ 863 DIWC (405(g))
- ☐ 863 DIWW (405(g))
- ☐ 864 SSID TITLE XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS - "4" MONTHS DISCOVERY TRACK**
- ☐ 870 TAXES (U.S. Plaintiff or Defendant)
- ☐ 871 IRS - THIRD PARTY 26 USC 7609

**OTHER STATUTES - "4" MONTHS DISCOVERY TRACK**
- ☒ 375 FALSE CLAIMS ACT
- ☐ 400 STATE REAPPORTIONMENT
- ☐ 430 BANKS AND BANKING
- ☐ 450 COMMERCE/ICC RATES/ETC.
- ☐ 460 DEPORTATION
- ☐ 470 RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS
- ☐ 480 CONSUMER CREDIT
- ☐ 490 CABLE/SATELLITE TV
- ☐ 891 AGRICULTURAL ACTS
- ☐ 893 ENVIRONMENTAL MATTERS
- ☐ 895 FREEDOM OF INFORMATION ACT
- ☐ 950 CONSTITUTIONALITY OF STATE STATUTES
- ☐ 890 OTHER STATUTORY ACTIONS
- ☐ 899 ADMINISTRATIVE PROCEDURES ACT / REVIEW OR APPEAL OF AGENCY DECISION

**OTHER STATUTES - "8" MONTHS DISCOVERY TRACK**
- ☐ 410 ANTITRUST
- ☐ 850 SECURITIES / COMMODITIES / EXCHANGE

**OTHER STATUTES - "0" MONTHS DISCOVERY TRACK**
- ☐ 896 ARBITRATION (Confirm / Vacate / Order / Modify)

**\* PLEASE NOTE DISCOVERY TRACK FOR EACH CASE TYPE. SEE LOCAL RULE 26.3**

---

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF CLASS ACTION UNDER F.R.Civ.P. 23   DEMAND $_____

JURY DEMAND ☒ YES ☐ NO (CHECK YES ONLY IF DEMANDED IN COMPLAINT)

## VIII. RELATED/REFILED CASE(S) IF ANY

JUDGE_____   DOCKET NO._____

CIVIL CASES ARE DEEMED RELATED IF THE PENDING CASE INVOLVES: (CHECK APPROPRIATE BOX)
- ☐ 1. PROPERTY INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- ☐ 2. SAME ISSUE OF FACT OR ARISES OUT OF THE SAME EVENT OR TRANSACTION INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- ☐ 3. VALIDITY OR INFRINGEMENT OF THE SAME PATENT, COPYRIGHT OR TRADEMARK INCLUDED IN AN EARLIER NUMBERED PENDING SUIT.
- ☐ 4. APPEALS ARISING OUT OF THE SAME BANKRUPTCY CASE AND ANY CASE RELATED THERETO WHICH HAVE BEEN DECIDED BY THE SAME BANKRUPTCY JUDGE.
- ☐ 5. REPETITIVE CASES FILED BY PRO SE LITIGANTS.
- ☐ 6. COMPANION OR RELATED CASE TO CASE(S) BEING SIMULTANEOUSLY FILED (INCLUDE ABBREVIATED STYLE OF OTHER CASE(S)):

- ☐ 7. EITHER SAME OR ALL OF THE PARTIES AND ISSUES IN THIS CASE WERE PREVIOUSLY INVOLVED IN CASE NO._____, WHICH WAS DISMISSED. This case ☐ IS ☐ IS NOT (check one box) SUBSTANTIALLY THE SAME CASE.

SIGNATURE OF ATTORNEY OF RECORD          9-2-15
                                          DATE